Dear Chief Kelley:
Your request for an Attorney General's opinion has been forwarded to me for research and reply. Your questions deal with a police officer from your police department who has been receiving temporary total disability benefits from Workers' Compensation and a stipend from the Police Officer's Supplemental Pay for more than three years. Specifically, you ask:
 1) Can this officer be terminated?
 2) Does the Town of Richwood have any financial liability for any accrued sick leave, vacation time, etc.?
 3) Should this officer have been declared "medically disabled" since he has been ill for an extended time?
With regard to your first question, the answer is that the officer's employment can be terminated. The pertinent statute is Louisiana Civil Code Article 2747:
 Article 2747. Contract of servant terminable at will of parties
 A man is at liberty to dismiss a hired servant attached to his person or family, without assigning any reason for so doing. The servant is also free to depart without assigning any cause.
In Louisiana, employees may generally be fired for any reason, or for no reason, in the absence of an employment contract for a specified period of time. This is commonly referred to as employment-at-will. The police officer does not have an employment contract for a specific period of time, so his employment may be terminated at any time for any reason as long as the termination is not retaliation for filing the compensation claim. Retaliatory discharge is an exception to the employment-at-will rule found in Louisiana Civil Code Art. 2747. The Louisiana workers' compensation statute prohibiting termination of an employee based upon a claim for compensation benefits is La. R.S.23:1361(B) which is as follows:
 No person shall discharge an employee from employment because of said employee having asserted a claim for benefits under the provisions of this Chapter or under the law of any state or of the United States. Nothing in this Chapter shall prohibit an employer from discharging an employee who because of injury can no longer perform the duties of his employment. (Emphasis added).
The purpose of this statute is to prohibit unlawful discharge in compensation cases and to allow employees to exercise his or her right to compensation benefits without fear of retaliatory action by their employer. Please note that this statute specifically states that you are not prohibited from discharging an employee who, because of injury, can no longer perform the duties of his employment. This is the case of the Richwood police officer who has been receiving temporary total disability benefits.
A temporary total disability is defined and described in La. R.S.23:1221(1):
 Compensation shall be paid under this Chapter in accordance with the following schedule of payments:
 (1) Temporary total.
 (a) For any injury producing temporary total disability of an employee to engage in any self-employment or occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, or experience, sixty-six and two-thirds percent of wages during the period of such disability. (Emphasis added).
 (b) For purposes of Subparagraph (1)(a) of this Paragraph, compensation for temporary disability shall not be awarded if the employee is engaged in any employment or self-employment regardless of the nature or character of the employment or self-employment including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain.
 (c) For purposes of Subparagraph (1)(a) of this Paragraph, whenever the employee is not engaged in any employment or self-employment as described in Subparagraph (1)(b) of this Paragraph, compensation for temporary total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment.
 (d) An award of benefits based on temporary total disability shall cease when the physical condition of the employee has resolved itself to the point that a reasonably reliable determination of the extent of disability of the employee may be made and the employee's physical condition has improved to the point that continued, regular treatment by a physician is not required.
Since the employee remains classified as one with a temporary total disability, he can no longer perform the duties of his employment and may be terminated. If the employee asserts a claim for being wrongfully terminated, the courts have stated that an employer must give a non-discriminatory reason for the discharge and present evidence that more probable than not the real reason for the employee's discharge was something other than the assertion of the compensation claim. The employee is then precluded from recovery on his retaliatory discharge claim.
If the employee asks to be rehired, you do not have to do so if the employee, because of his injury, can no longer perform the duties of his employment. However, if he ever becomes capable of doing the job, you may have to address the issue of rehiring. The Louisiana Supreme Court in Cahill v. Frank's Door and Building Supply, 590 So.2d 53 (La. 1991), held that an employee was the victim of unlawfull discrimination when his employer admitted he was capable of doing the job, but did not rehire the employee for "safety reasons." We do not know if the employee's injuries will ever be healed to the point that he will ask to be rehired, but if he is capable of doing the job and is denied employment it must be for some reason other than the fact that he previously was injured and filed a compensation claim. Also, seeBrannan v. Wyeth, 526 So.2d 1101 (La. 1988) and Quebedeaux v. DowChemical Co., 820 So.2d 542 (La. 2002) for more discussion of employment-at-will.
With regard to your second question, the Town of Richmond is liable for accrued sick leave and vacation time because the officer is off work because of his compensation claim. He cannot be forced to use sick leave or vacation time if he is receiving compensation and must be paid for unused leave upon his termination. He must continue to receive compensation benefits if he remains classified as having a temporary total disability. In addition, even after the employee is terminated, if he is released to return to work at wages less than ninety percent or more of his wages at the time of injury, he may be entitled to receive supplemental earnings benefits. These benefits are described in La. R.S.23:1221(3) as follows:
 (3) Supplemental earnings benefits.
 (a) For injury resulting in the employee's inability to earn wages equal to ninety percent or more of wages at time of injury, supplemental earnings benefits equal to sixty-six and two-thirds percent of the difference between the average monthly wages at time of injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any employment or self-employment, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason of education, training, and experience, such comparison to be made on a monthly basis. Average monthly wages shall be computed by multiplying his "wages" by fifty-two and then dividing the quotient by twelve.
 (b) For purposes of Subparagraph (3)(a), of this Paragraph, the amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sums actually received by the employee, including, but not limited to, earnings from odd-lot employment, sheltered employment, and employment while working in any pain.
 (c)(i) Notwithstanding the provisions of Subparagraph (b) of this Paragraph, for purposes of Subparagraph (a) of this Paragraph, if the employee is not engaged in any employment or self-employment, as described in Subparagraph (b) of this Paragraph, or is earning wages less than the employee is able to earn, the amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sum the employee would have earned in any employment or self-employment, as described in Subparagraph (b) of this Paragraph, which he was physically able to perform, and (1) which he was offered or tendered by the employer or any other employer, or (2) which is proven available to the employee in the employee's or employer's community or reasonable geographic region.
 (ii) For purposes of Subparagraph (i) of this Subparagraph, if the employee establishes by clear and convincing evidence, unaided by any presumption of disability, that solely as a consequence of substantial pain, the employee cannot perform employment offered, tendered, or otherwise proven to be available to him, the employee shall be deemed incapable or performing such employment.
 (d) The right to supplemental earnings benefits pursuant to this Paragraph shall in no event exceed a maximum of five hundred twenty weeks, but shall terminate:
 (i) As of the end of any two-year period commencing after termination of temporary total disability, unless during such two-year period supplemental earnings benefits have been payable during at least thirteen consecutive weeks; or
 (ii) After receipt of a maximum of five hundred twenty weeks of benefits, provided that for any week during which the employee is paid any compensation under this Paragraph, the employer shall be entitled to a reduction of one full week of compensation against the maximum number of weeks for which compensation is payable under this Paragraph; however, for any week during which the employee is paid no supplemental earnings benefits, the employer shall not be entitled to a reduction against the maximum number of weeks payable under this Paragraph; or
 (iii) When the employee retires; however, the period during which supplemental earnings benefits may be payable shall not be less than one hundred four weeks.
 (e)(i) The fact that an employee has suffered previous disability, impairment, or disease, or received compensation therefor, shall not preclude him from receiving benefits for a subsequent injury or preclude benefits for death resulting therefrom.
 (ii) If an employee receiving supplemental earnings benefits suffers a subsequent injury causing the payment of temporary total disability, permanent total disability, or supplemental earnings benefits, the combined benefits payable shall not exceed the maximum compensation rate in effect for temporary total disability at the time of the subsequent injury. Any reduction in benefits due to such limit shall be applied first to the supplemental earnings benefits payable as a result of the prior injury.
 (f) Any compensable supplemental earnings benefits loss shall be reported by the employee to the insurer or self-insured employer within thirty days after the termination of the week for which such loss is claimed. The director shall provide by rule for the reporting of supplemental earnings benefits loss by the injured worker and for the reporting of supplemental earnings benefits and payment of supplemental earnings benefits by the employer or insurer to the office and may prescribe forms for such reporting. The office, upon request by the employer or insurer, shall provide verification through unemployment compensation records under the Louisiana Employment Security Law of any claimed supplemental earnings benefits loss and shall obtain such verification from other states, if applicable.
 (g) When an injured employee has been released to return to work with or without restrictions, and the employer maintains an established written and promulgated substance abuse policy which requires employer-administered drug testing prior to employment or return to work, upon the employee's failure to meet the requirements of such employer's established policy and inability to qualify for the position for that reason, the obligation for all benefits pursuant to this Chapter, with the sole exception of the obligation to provide reasonable and necessary medical treatment, shall be terminated and the employee shall be subject to the terms and conditions established in the employer's promulgated drug testing policy and program. The provisions of this Subparagraph shall not apply to prescription medication prescribed for the employee in the dosages so prescribed by a physician.
Additionally, the employee may be entitled to receive vocational rehabilitation services even if he has been terminated. These services are described in La. R.S. 23:1226 as follows:
 § 1226. Rehabilitation of injured employees
 A. When an employee has suffered an injury covered by this Chapter which precludes the employee from earning wages equal to wages earned prior to the injury, the employee shall be entitled to prompt rehabilitation services. Vocational rehabilitation services shall be provided by a licensed professional vocational rehabilitation counselor, and all such services provided shall be compliant with the Code of Professional Ethics for Licensed Rehabilitation Counselors as established by R.S. 37:3441 et seq.
 B. (1) The goal of rehabilitation services is to return a disabled worker to work, with a minimum of retraining, as soon as possible after an injury occurs. The first appropriate option among the following must be chosen for the worker:
 (a) Return to the same position.
 (b) Return to a modified position.
 (c) Return to a related occupation suited to the claimant's education and marketable skills.
 (d) On-the-job training.
 (e) Short-term retraining program (less than twenty-six weeks).
 (f) Long-term retraining program (more than twenty-six weeks but not more than one year).
 (g) Self-employment.
 (2) Whenever possible, employment in a worker's local job pool must be considered and selected prior to consideration of employment in a worker's statewide job pool.
 (3)(a) The employer shall be responsible for the selection of a licensed professional vocational rehabilitation counselor to evaluate and assist the employee in his job placement or vocational training. Should the employer refuse to provide these services, or a dispute arises concerning the work of the vocational counselor, the employee may file a claim with the office to review the need for such services or the quality of services being provided. The procedure for hearing such claims shall be expedited as provided in R.S. 23:1124.
 (b) An employee shall have no right of action against a vocational counselor for tort damages related to the performance of vocational services unless and until he has exhausted the administrative remedy provided for in Subparagraph (a) of this Paragraph. The running of prescription shall be suspended during the pendency of the administrative proceedings provided for in this Paragraph.
 (c) The expedited procedure shall also be made available to the employer to require the employee's cooperation in the rehabilitation process. Refusal to accept rehabilitation as deemed necessary by the worker's compensation judge shall result in a fifty percent reduction in weekly compensation, including supplemental earnings benefits pursuant to R.S. 23:1221(3), for each week of the period of refusal.
 C. (1) Rehabilitation services required for disabled workers may be initiated by:
 (a) An insurer or self-insured employer by designating a rehabilitation provider and notifying the office.
 (b) The office by requiring the insurer or self-insured employer to designate a rehabilitation provider.
 (c) The employee, through a request to the office. The office shall then require the insurer to designate a rehabilitation provider.
 (2) Rehabilitation services provided under this Part must be delivered through a rehabilitation counselor approved by the office.
 D. Prior to the workers' compensation judge adjudicating an injured employee to be permanently and totally disabled, the workers' compensation judge shall determine whether there is reasonable probability that, with appropriate training or education, the injured employee may be rehabilitated to the extent that such employee can achieve suitable gainful employment and whether it is in the best interest of such individual to undertake such training or education.
 E. When it appears that a retraining program is necessary and desirable to restore the injured employee to suitable gainful employment, the employee shall be entitled to a reasonable and proper retraining program for a period not to exceed twenty-six weeks, which period may be extended for an additional period not to exceed twenty-six additional weeks if such extended period is determined to be necessary and proper by the workers' compensation judge. However, no employer or insurer shall be precluded from continuing such retraining beyond such period on a voluntary basis. An injured employee must request and begin retraining within two years from the date of the termination of temporary total disability as determined by the treating physician. If a retraining program requires residence at or near the facility or institution and away from the employee's customary residence, reasonable cost of board, lodging, or travel shall be borne by the employer or insurer. A retraining program shall be performed at facilities within the state when such facilities are available.
 F. Temporary disability benefits paid pursuant to R.S. 23:1221(1) shall include such period as may be reasonably required for training in the use of artificial members and appliances and shall include such period as the employee may be receiving training or education under a retraining program pursuant to this Section.
 G. The permanency of the employee's total disability under R.S. 23:1221(2) cannot be established, determined, or adjudicated while the employee is employed pursuant to an on-the-job training or a retraining program as provided in Subsections B and E of this Section.
The answer to your last question is that since the officer is receiving temporary total benefits as a result of his compensation claim, he has already been declared "medically disabled." He could not receive these benefits without being medically disabled. According to La. R.S. 23:1221(1)(c) and (d), temporary total disability is awarded only if the employee proves that he is physically unable to engage in any employment or self-employment. This award of benefits ceases when the physical condition of the employee has improved to the point that continued, regular treatment by a physician is not required. Once the officer is no longer medically disabled, his benefits cease.
We trust your questions have been answered. However, if you should need anything further, do not hesitate to contact this office.
 Very truly yours,
 CHARLES C. FOTI, JR. ATTORNEY GENERAL
 BY: ___________________________ FRANCES J. PITMAN ASSISTANTATTORNEY GENERAL
 CCF, Jr.:FJP:sc