McDonald, j.
| gPIaintiffiappellant, Peggy Juneau, appeals a decision rendered in the Worker’s Compensation Office, District 5, in favor of the Franciscan Missionaries of Our Lady Health System and Our Lady of the Lake Hospital (OLOL). Four assignments of error are made: (1) legal error in dismissing Ms. Juneau’s claim; (2) manifest error in holding that OLOL and Younger & Associates had provided Ms. Juneau with any more than sham rehabilitation; (3) manifest error in upholding the reduction in benefits; and (4) manifest error in denying penalties and attorney fees.
We review the record and the proceedings mindful that on appellate review factual findings in worker’s compensation cases are entitled to great weight. Reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Ducote v. J.A. Jones Const. Co, 471 So.2d 704, 706 (La. 1985).
Peggy Juneau is a high school graduate. She completed six months of trade school before moving to Baton Rouge in 1968. She has had cerebral palsy all of her life, leaving her with a partially paralyzed right hand. She was hired by OLOL in early 1969 and worked for them 35 years. While employed by OLOL, she had two off duty accidents, for which she was treated by Dr. Lawrence Messina. After the second accident, her duties were changed because her former job required lifting boxes too heavy for her to handle. She was assigned to essentially a clerk position, with duties on the computer involving patient financial records.
On December 30, 2003, Ms. Juneau tripped and fell while at work, fracturing her right hip. Dr. Messina surgically treated the fracture with a hip replacement. She was paid worker’s compensation benefits for total temporary disability (TTD) from the accident until May 28, 2005, at a rate of $254.97 per | ¡¡week. Her work-related injuries healed, although Ms. Juneau reports that she now walks with a limp. A functional capacity examination performed in 2004 had indicated that Ms. Juneau could return to work on a sedentary level. She was discharged by Dr. Messina to return to sedentary work with a prohibition against lifting anything over 10 pounds. However, in Dr. Messina’s opinion she could not return to her previous job. She was offered a job by OLOL *1085 as a telephone operator, but Ms. Juneau declined this position because she believed that it “would have been more than what [she] could have actually handled.”
Ms. Juneau went to the personnel office for assistance. She also applied for two other jobs with the hospital, but was not hired. Two counselors within OLOL risk management worked with Ms. Juneau attempting to find her a job. Eventually she was referred to the vocational rehabilitation firm of Younger & Associates.
After May 28, 2005, OLOL began paying Ms. Juneau supplemental earnings benefits (SEB) at the same rate as the TTD benefits, $254.97 per week. On August 1, 2005, OLOL reduced the weekly SEB to $81.64, based on an earning capacity of $6.50 per hour. OLOL’s labor market research indicated that Ms. Juneau had the earning capacity of $8.00 to 9.00 per hour, but OLOL used the $6.50 rate, which would pay higher benefits to Ms. Juneau. In November 2005, Ms. Juneau filed a Disputed Claim for Compensation in response to the SEB reduction and her failure to secure a job. Her primary complaint was that her SEB benefits should not have been reduced in August 2005, and the vocational rehabilitation was a “sham.”
Ms. Juneau was supplied with thirteen job leads over eight months of service that conformed to Ms. Juneau’s restrictions, six of which were approved by Dr. Messina. Ms. Juneau applied for the jobs, but was not hired. In one job opening they required a typing test, which Ms. Juneau failed. All of the job leads were in Ms. Juneau’s geographical area and contained a detailed job description that |4conformed to Ms. Juneau’s limitations. Additionally, Ms. Juneau made over 300 attempts to find employment that were not successful. She was able to obtain part time employment with a home health care service provider, earning $1,300.00 over an eighteen-month period. In some cases she could not accept assignments because of problems with her left hand. In January 2008, Ms. Juneau had surgery on her left hand to relocate a tendon in her thumb. The hand continued to cause problems, which required another surgery later that year.
Both the appellant and appellee cite Banks v. Industrial Roofing & Sheet Metal Works, Inc., 696 So.2d 551 (La. 1997), as setting the standard whereby an employer can discharge its burden of proving meaningful rehabilitation efforts. The Banks court set forth a three-pronged test and did not require actual job placement. Banks, 696 So.2d at 556-557. Ms. Juneau was provided thirteen job leads that were in her geographical area and conformed to her limitations over the eight months that Younger & Associates provided rehabilitation services. After careful review of the law and evidence, we find that the employer has met its burden of providing meaningful rehabilitation service. We find no error in the reduction of benefits and the dismissal of the claim. Therefore, the decision of the Worker’s Compensation judge that the vocational rehabilitation was proper, adjusting the amount based on the change in the federal minimum wage, and dismissing the claim with prejudice is affirmed. Costs are assessed against appellant, Peggy Juneau.
AFFIRMED.
KUHN, J., dissents & assigns reasons.